IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE WINN, | ) | CASE NO. 1:15 CV 1562 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| JANE DOE #1, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Antoine Winn filed the above-captioned action against St. Vincent Charity Hospital Psychiatric Nurse Jane Doe #1, Cleveland Police Chief Calvin Williams, the Cleveland Police Department, Cleveland Police Sergeant Ricky Davis, Cleveland Police Supervisor Jane Doe #2, Cleveland Jail Nurse Jane Doe #3, Cleveland Jail Attendant Ambercombie, Cleveland Jail Intake Officer John Doe #4, and Cleveland Police Transport Officers John Does # 5 and #6. In the Complaint, Plaintiff alleges the Defendants were deliberately indifferent to his serious medical needs and denied him a free telephone call. He seeks monetary damages.

**Factual and Procedural Background**

Plaintiff alleges that he sustained serious gun shot wounds on June 6, 2013, resulting in an immediate emergency colostomy. Since then, Plaintiff has worn an external ostomy bag. Plaintiff claims he also suffers from post traumatic stress disorder, schizophrenia, anti-social personality, and depression.

Plaintiff was arrested on August 10, 2013 and transported to the Cleveland Jail. Later that

morning, while sleeping deeply, he was startled awake by a warm wetness which he initially thought was blood. Instead, he discovered his ostomy bag had ruptured or leaked causing him to be covered in fecal matter. Plaintiff became agitated by the situation and was transported to the psychiatric ward of St. Vincent's Charity Hospital. He claims psychiatric nurse Jane Doe #1 embarrassed him by making him shower before examining him. She also took his soiled jail clothing and gave him clean hospital clothing to wear. Upon exiting the shower, hospital personnel interviewed him and determined he did not require hospitalization. He claims they did not address his ostomy issues before releasing him to John Doe #5 and John Doe #6.

Plaintiff contends that when he returned to the jail, the extra ostomy bag provided to him by the hospital was confiscated by intake officer John Doe #4 who informed him that the nurse, Jane Doe #3 would give him a new bag. He alleges he fell asleep in his cell with his stoma exposed before he could inquire about getting a new ostomy bag. Once again, he was awakened by the feeling of fecal matter on his body. He indicates he again became agitated and began yelling for corrections officers. No officer arrived, so he stuffed his blanket in the toilet and flooded the floor. This time Ricky Davis and Nurse Jane Doe #3 came to him, took away his hospital clothing and placed him in a suicide watch cage. He claims he still was not given an ostomy bag; however, he also indicates he was arrested on new charges because he threw his ostomy bag at Davis. He was then transported to St. Vincent's Charity hospital for the second time that day.

Upon his return to the jail, Plaintiff was placed on suicide watch and demanded a free telephone call. He claims Ambercombie and John Doe #2 would not give him a free telephone call.

Plaintiff asserts three claims in his Complaint. First, he claims the Defendants were

deliberately indifferent to his serious medical needs. Second, he claims John Doe #2 and Ambercomie denied him due process by not allowing him to make a free telephone call. Finally, he claims the Defendants retaliated against him for stating he was going to file a grievance by not allowing him to use the telephone.

## Standard of Review

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions

or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)

## Discussion

### I. Deliberate Indifference to Serious Medical Needs

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Baker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Although this same right is extended to pretrial detainee through the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), the claims are analyzed under the same rubric as Eighth Amendment claims brought by prisoners. *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court remarked that "having stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* at 833. The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the

safety of the inmates.' " *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, see *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988); see *Thaddeus-X v. Blatter, 175* F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A Plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312,

319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In the context of a claim regarding medical treatment, an inmate must show two elements to demonstrate a violation of his Eighth Amendment rights: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need. *Id.* It is clear from the foregoing that the duty to provide a certain level of health care to incarcerated offenders under the Eighth Amendment is a limited one. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03–2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). The Court must first determine whether Plaintiff's medical condition is sufficiently serious to invoke Eighth Amendment protection. If the condition is sufficiently serious, the Court will then proceed to inquire whether the Defendants exhibited deliberate indifference to Plaintiff's medical condition.

As an initial matter, it is not clear that Plaintiff established the objective element of his Eighth Amendment claim. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that the prisoner required immediate medical attention that even a lay person would easily recognize the severity of the situation. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Whether a medical need is "obvious" does not depend on whether it was, in fact, obvious to anyone at the time; that issue goes to the subjective, rather than the objective, component of deliberate indifference. *Gunther v. Caslineta*, No. 11–3627, 561 Fed. Appx. 497,

499–500 (6th Cir. Apr.2, 2014). Instead, the question is whether the average person would easily recognize, either from observing the person or being told of his symptoms, that the Plaintiff's condition needed treatment. In other words, a medical need is obviously serious if the average person would deem it to be one that required immediate professional treatment. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Under this standard, a line is drawn between the medical conditions or complaints which require medical treatment and those which present what are essentially options for the inmate in terms of seeking relief from symptoms. On one side of this line are conditions such as occasional indigestion or constipation, dandruff, acne, vitiligo, chapped lips, dry hands, most headaches, most colds (uncomplicated with fever), seasonal allergies, eczema, and muscle ache from exertion, and those conditions which dictate "treatment" for cosmetic purposes or purposes of convenience or comfort. *See Peters v. Berghuis*, No. 1:09–cv–14, 2009 WL 261387 (W.D. Mich. Feb.3, 2009) (inmate's complaint that he found it hard to sleep because the lack of proper ventilation, dry air and dust in the unit caused him to suffer sinus headaches and congestion pressure was not "the sort of serious medical condition that would implicate the Eighth Amendment."); *Davidson v. Scully*, No. 81 Civ. 0390(PKL), 86012, 2001 WL 963965, at *5 (S.D.N.Y. Aug.22, 2001) (inmate's common seasonal allergies which caused headaches, earaches, sinus congestion, soreness in his throat and eyes, tearing, and nasal infections did not constitute serious medical need under the Eighth Amendment). On the other side of the line are serious medical needs which may be "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). The state need not treat prisoners at a level that "exceeds what the

average reasonable person would expect or avail [him]self of in life outside the prison walls." *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir. 1986).

In this case, Plaintiff's claim centers around a ruptured or leaking ostomy bag, causing him to be covered in fecal matter twice in one day. While he was transported to St. Vincent's Charity Hospital each time, the purpose of his visit was for psychiatric treatment, not necessarily to receive an ostomy bag. A leaking or ruptured ostomy bag, while undoubtedly uncomfortable, is not a condition for which a reasonable person outside of prison would seek emergency medical attention. Moreover, the situation was resolved on Plaintiff's second trip to St. Vincent's Hospital. His ruptured or leaking ostomy bag was not an obviously serious a medical condition that satisfies the objective criterion of an Eighth Amendment claim. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005)

In addition, Plaintiff fails to satisfy the subjective element by showing that each of the Defendants knew of a serious medical condition, and acted with deliberate indifference to Plaintiff's health or safety. *Wilson*, 501 U.S. at 302-03. Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. Plaintiff must show that prison officials had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000) (citing *Farmer*, 511 U.S. at 834). This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff alleges John Doe #4 took the extra ostomy bag that the hospital gave him and told

-8-

him that the nurse, Jane Doe #3 would get him a new bag. Plaintiff fell asleep and the bag did not get delivered. There are no allegations in the Complaint suggesting that either John Doe #4 or Jane Doe #3 perceived a substantial risk of serious harm to Plaintiff and then acted to deny him medical care.

Plaintiff further claims John Doe #5 and John Doe #6 transported him to the hospital for a psychiatric evaluation and brought him back to the jail when he was discharged. His claims against these Defendants appears to be based on the fact that they returned him to jail upon discharge even though he believed he required additional medical treatment for his ostomy. Plaintiff does not allege facts to suggest that these Defendants perceived an actual risk of serious harm to him and disregarded that risk.

Finally, Plaintiff claims Ricky Davis confiscated the soiled hospital gown Plaintiff had been wearing, stating it could be used by Plaintiff to hang himself. At that point, Plaintiff had already been transported to the hospital because it appeared to jail officials that he was having a psychiatric episode. He was placed on suicide watch. There are no facts in the Complaint which suggest Davis was deliberately indifferent to Plaintiff's serious medical needs when he confiscated soiled clothing that Plaintiff could use to commit suicide.

II.     **Due Process**

Plaintiff also claims John Doe #2 and Ambercombie denied him a free telephone call after his arrest. He indicates this denied him due process. The right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law. *Harrill v. Blount County, Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995). Accordingly,

Plaintiff failed to state a claim for denial of due process.

### III. Retaliation

Plaintiff further claims John Doe #2 and Ambercombie retaliated against him by denying him a telephone call. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff's claim is a bit difficult to decipher. It appears he is saying that he wanted to use the free telephone call to which he believed he was entitled after his arrest to call either the internal affairs department or an attorney to report the earlier incidents regarding his ostomy bag. However, when he was returned from the hospital after his second psychiatric evaluation of the day, he was taken immediately to a suicide watch cell. The Defendants would not remove him from that cell to allow him to use the telephone to make a free telephone call.

#### A. Protected Conduct

Incarcerated prisoners retain First Amendment rights, but those rights necessarily are circumscribed because of the legitimate penological and administrative interests of the prison system. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that limitations on prisoner constitutional rights are valid if reasonably related to legitimate penological interests). In the First

-10-

Amendment context "prisoners have no *per se* constitutional right to use a telephone." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000). *See also Valdez*, 302 F.3d 1039 (holding that there is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a means of exercising this right"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to unlimited telephone use"). Furthermore, while filing a grievance against prison officials is conduct protected by the First Amendment, filing frivolous grievances is not protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). To the extent Plaintiff is asserting that he had a constitutional right to use the telephone to express his discontent with the events of the day, he has not demonstrated that he was engaged in protected conduct.

### B. Adverse Action

The second element that Plaintiff must establish for his retaliation claim is that the Defendants took an adverse action against him. *Thaddeus–X*, 175 F.3d at 396. An adverse action is one that is " capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Plaintiff does not have to show actual deterrence. *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus–X*, 175 F.3d at 398. While this element is not an overly difficult one for the Plaintiff to meet, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations.

*Id.*

In this case, the adverse action of which Plaintiff complains is that Defendants would not allow him to make a free telephone call at that time. Plaintiff had just returned from his second trip to the hospital in one day for a psychiatric evaluation and had been placed in suicide watch. Not allowing him to leave suicide watch to make a telephone call, is not an adverse action that would deter a person of ordinary firmness from exercising his right to file grievances.

### C. Causal Connection

Even if Plaintiff had established that he was engaged in constitutionally protected conduct and the Defendants' actions against him were sufficient to deter a person of ordinary fitness from engaging in that conduct, Plaintiff has not established a causal connection between the attempt to make a telephone call and a retaliatory motive. To satisfy the third element, Plaintiff must establish that the adverse action was motivated, at least in part, by his participation in protected conduct. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). This element addresses whether the Defendants' subjective motivation for taking the adverse action was at least in part to retaliate against Plaintiff for engaging in protected conduct. *Thaddeus–X*, 175 F.3d at 399.

There is no indication in the Complaint that the adverse actions described above were motivated by protected conduct in which Plaintiff engaged. Given Plaintiff's admitted psychiatric needs, his two visits to the psychiatric ward of St. Vincent's Hospital in one day, his placement on suicide watch, and his attack on an officer earlier in the day, there is no indication that the Defendants refused his request to be release from his cell because they wanted to retaliate against him for attempting to file grievances. His retaliation claims are also dismissed.

IV.     **Claims against the Chief of Police**

Finally, Plaintiff fails to allege any facts or assert any claims against Calvin Williams. Plaintiff cannot establish the liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). To meet basic notice pleading requirements, the Complaint must give the Defendants fair notice of what the Plaintiff's claims are and the grounds upon which they rest. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). Although Plaintiff includes Williams as a Defendant in the case caption, he does not indicate what claims he is asserting against Williams and in what conduct Williams engaged that gives rise to those claims. Without this information, Plaintiff has not stated a claim against Williams.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e) for lack of subject matter jurisdiction. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

*Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: 12/16/15

---

[1]  28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.